In the Matter of ANTHONY CHIAINO, Petitioner, *v.* JOHN P. LOMENZO, as Secretary of State, Respondent.

First Department, December 15, 1966.

470

*Alan Nemser* for petitioner.

*Philip Weinberg* of counsel (*Samuel A. Hirshowitz* with him on the brief; *Louis J. Lefkowitz, Attorney-General*), for respondent.

STEVENS, J. This is an article 78 proceeding to review a determination of respondent dated January 28, 1966, finding petitioner guilty of untrustworthiness and suspending petitioner's license for 90 days. The determination was premised upon a finding that after promising not to participate further in a particular transaction he permitted a lease to be executed.

The question before us is whether there is substantial evidence to support the determination.

Petitioner, a real estate broker, was charged with a violation of article 12-A of the Real Property Law based on the contents of an affidavit submitted by a Senior Special Investigator in the Civil Rights Unit under the jurisdiction of the Department of State. The affidavit set forth that one Vitucci, owner of certain property in Canarsie, N. Y., which was advertised for sale, refused to sell the premises to a Negro prospective buyer who sought to purchase the same. The affidavit alleged a complaint was filed with the New York City Commission on Human Rights,

the matter referred to the Corporation Counsel of the City of New York for a temporary injunction, a hearing held, after which petitioner "was advised and agreed that they would not further the sale or rental of such housing accommodation." Instead, petitioner and others consummated the lease on the property to another, a member of the white race.

Under section 441-c of the Real Property Law, the Department of State may revoke or suspend the license of a real estate broker for demonstrated untrustworthiness. Testimony offered in support of the charge consisted of testimony by the prospective buyer of conversations with Vitucci in November and December, 1964, evidence that up to early or middle August, 1965 the property was still on the market and was eventually leased to a white person by lease dated August 24, 1965 for a period of two years. The actual leasing was handled by a Mr. Varacchi, a salesman in petitioner's office who, according to his testimony, learned of the possible civil rights litigation after completion of the transaction.

The first direct personal contact by the investigator with petitioner was on September 3, 1965, after the consummation of the lease between Vitucci and the new tenant. At that time no injunction or stay was outstanding against Vitucci. In fact, because of difficulty in serving Vitucci, the proceeding against him was not commenced until about August 30, 1965. A decision adverse to Vitucci was rendered September 16, 1965, though up to the time of the hearing no order had been entered thereon. There was testimony by an Assistant Corporation Counsel that sometime in August, 1965 he had telephoned petitioner's office, spoken to someone there, informed them of the charges against Vitucci, and was assured no action in furtherance of disposition of the property would be taken while the charges were pending. Petitioner admitted such a conversation occurred but testified that it was subsequent to acceptance of a $100 deposit from the prospective lessee on August 23, 1965. Petitioner testified also that the date of his first conversation with someone from the Department of State was August 26, 1965, while the person with whom petitioner allegedly spoke fixed such date as August 24, 1965. Petitioner acknowledged he then promised to do nothing to further the transaction and he asserts that he respected such promise. However, the matter was carried on by Vitucci and Varacchi.

From the foregoing recital it is clear that petitioner was not a party to the alleged oral agreement between Vitucci and the Corporation Counsel, nor was he a party to the lease or to the later litigation commenced against Vitucci. Essentially, peti-

tioner was informed of an alleged oral agreement with Vitucci but nevertheless " permitted a lease to be executed."

Petitioner was not charged with permitting a lease to be executed. He was charged with consummating the lease, an affirmative act. There is no proof that he consummated the lease — the evidence is to the contrary and the charge is not sustained (see *Matter of Abel* v. *Lomenzo,* 25 A D 2d 104). Moreover, it appears that when petitioner first learned of the dispute he, or his office, had already served their primary function of bringing the owner-lessor and the lessee together and in fact had accepted a deposit. That petitioner accepted a commission after the transaction was consummated is irrelevant under the circumstances shown to exist. Additionally, petitioner was never in touch with the prospective buyer and accordingly untrustworthiness cannot be predicated upon any breach of a duty to her or to the general public as a result of petitioner's conduct.

When proceedings involving a charge of untrustworthiness are brought, the charge should be definite so that the accused might know against what he has to defend. (Real Property Law, § 441-e.)

Prompt application for an injunction, where feasible, joining all parties, with a temporary stay pending the hearing for disposition of the charges upon which the injunction is sought might avoid a situation such as is present here. Or, had an injunction been obtained against the owner and knowledge of that fact brought home to petitioner prior to the transaction petitioner would then have acted at his peril. There should be a showing either of a pattern of conduct, or if a particular act is charged as a violation, the charge should be supported by substantial evidence. We do not here attempt to define " untrustworthiness " or fix the absolute limits of its application. However, there should be such factual presentation concerning acts or conduct by the licensee or his agent as would warrant a conclusion of unreliability, and which establishes that any confidence or reasonable expectation of fair dealing to the general public would be misplaced. It is apparent from the context in which the term " untrustworthiness " appears in the statute that the Legislature intended the Secretary of State to be vested with a wide discretion in determining what should be deemed untrustworthy conduct. (Cf. *Matter of Edelstein* v. *Department of State,* 16 A D 2d 764; cf. *Matter of Abel* v. *Lomenzo,* 25 A D 2d 104, *supra*; *Matter of Tegeler* v. *Department of State,* 23 A D 2d 917; *Matter of Frank* v. *Department of State,* 14 A D 2d 139; *Matter of Smith* v. *Department of State,* 3 A D 2d 954; *Matter of Scheidecker* v. *Department of State,* 242 App. Div.

119, mod. on rehearing 242 App. Div. 891.) This is as it should be for his is the obligation of protecting the public against wrongdoing or incompetency. Nevertheless, his powers are conferred by and he must proceed in accordance with the statute (Real Property Law, §§ 441-c, 441-e), and his actions are subject to judicial review at the instance of the aggrieved party (Real Property Law, § 441-f). On such review, where the action taken follows upon a hearing, the applicable standard, if the determination is to be sustained, is that there must be substantial evidence adduced in support of the charges (*Matter of Tegeler* v. *Department of State, supra*). "A finding is supported by the evidence only when the evidence is so substantial that from it an inference of the existence of the fact found may be drawn reasonably. A mere scintilla of evidence sufficient to justify a suspicion is not sufficient to support a finding upon which legal rights and obligations are based." (*Matter of Stork Rest.* v. *Boland.* 282 N. Y. 256, 273–274.)

This standard has not been met. The proof is insufficient and insubstantial. The broker could not be bound by an alleged oral agreement with the owner to which he was not a party, nor is there even satisfactory proof of knowledge by petitioner of such agreement at the time petitioner performed his primary function. The determination should be annulled, on the law, and the charges dismissed, without costs to either party.

BREITEL, J. P., STEUER, CAPOZZOLI and WITMER, JJ., concur.

Determination unanimously annulled, on the law, without costs or disbursements to either party, and the charges dismissed.