In the Matter of PATRICK DIONA, Doing Business as UTILITY REAL ESTATE, Petitioner, *v.* JOHN P. LOMENZO, as Secretary of State, Respondent.

First Department, December 15, 1966.

*Nazareth Magarian* of counsel (*Nobile & Magarian,* attorneys), for petitioner.

*Shirley Adelson Siegel* of counsel (*Samuel A. Hirshowitz* and *Roger N. Beilenson* with her on the brief; *Louis J. Lefkowitz, Attorney-General*), for respondent.

STEVENS, J.  This is an article 78 proceeding by which petitioner seeks a review and annulment of respondent's determination revoking petitioner's current real estate broker's license as of May 23, 1966, for untrustworthiness.  The license by its terms would have expired October 31, 1967.  The license was revoked after a full hearing, so the question posed is whether there is substantial evidence to support the determination.

Jurisdiction to hear and determine charges against real estate brokers and salesmen is vested in the Department of State (Real Property Law, § 441-c).  It is provided: " 1. Powers of department.  The department of state may revoke the license of a real

estate broker or salesman or suspend the same, for such period as the department may deem proper, upon conviction of the licensee of a violation of any provision of this article [art. 12-A], or for a material misstatement in the application for such license, or if such licensee has been guilty of fraud or fraudulent practices, or for dishonest or misleading advertising, or has demonstrated untrustworthiness or incompetency to act as a real estate broker or salesman, as the case may be.''

A broker is responsible for the wrongful acts of a salesman employed by him if he has actual knowledge of such acts, or retains the benefits or proceeds of a transaction wrongfully negotiated by such salesman after notice of the salesman's misconduct (Real Property Law, § 442-c).

The charges against petitioner were (1) that an employee of petitioner, one Esme Delaney, prior to being licensed as a real estate salesman, engaged in the functions of a real estate salesman in the negotiation of listings and rentals of apartments; (2) that petitioner allegedly engaged in practices designed to deny housing accommodations to persons of the Negro race by allegedly stating to them the unavailability of apartments registered except in those areas inhabited by Negro persons; and specifically pursuant to such design or plan he did on May 26, 1965, so inform one Jewell Parker, a Negro, that he had no listings of five rooms or larger apartments at rentals not exceeding $175 per month except in one named place inhabited by non-white persons, when in truth and fact he had listings of apartments with the requirements desired, and allegedly misrepresented the unavailability of apartments solely by reason of the fact that Jewell Parker was a Negro person; (3) that petitioner improperly engages in the practice of collecting a $10 registration fee from persons desiring apartments, which fee is not refunded where no apartment is secured. The foregoing charges were submitted to determine if petitioner demonstrated untrustworthiness pursuant to section 441-c of the Real Property Law.

The charges above enumerated were definite, certain and put petitioner on notice of that against which he had to defend (cf. *Matter of Chiaino* v. *Lomenzo,* 26 A D 2d 469; Real Property Law, § 441-c).

At the hearing evidence was produced which sustained the charge with reference to Parker, and established as well by competent proof, a pattern of similar misrepresentations as to other Negroes. White and Negro investigators from the Department of State, and white and Negro civilians not identified with the department testified to their individual experience with

petitioner or his employee with respect to apartment search and apartment listings given them. In some instances the divergent results were experienced within the space of a few hours or the same day. In one instance a Negro observing an advertisement of an available apartment, telephoned the office of petitioner, was advised the apartment was available, visited the office and was told by a woman employee the apartment had been taken. A few hours later she telephoned from her office to petitioner's office and was informed the apartment was available. When calling some two hours later she was informed a man from New Jersey had just left a deposit.

There was testimony of deposit collections and listings given by an unidentified female employee in petitioner's office during 1964 and 1965. Delaney was licensed as a real estate salesman April 30, 1965. She did not testify at the hearing and petitioner testified he first employed her in February, 1965. Petitioner testified he did not recall who was employed by him in his office in 1964, that he did not depend upon his real estate firm for a livelihood. In fact from 1963 through 1965 he averaged maybe 10 hours a week at the office.

The pattern of misrepresentation as to available housing was clearly and fully established. That in itself, without regard to the race of the applicants, might be sufficient to establish untrustworthiness with respect to the general public. A real estate broker deals in a commodity whether it be residential housing or commercial buildings, and licensees should be required to deal openly and fairly with the public when information is sought from them. Clearly there was also misrepresentation as to apartments available based on color and racial identity. Such conduct constitutes an unlawful discriminatory practice under section 296 of the Executive Law and is prohibited.

On this appeal petitioner urges the disciplinary powers of respondent are limited to those matters enumerated in article 12-A of the Real Property Law, and "untrustworthiness is not synonymous with discrimination." It is true the word is not synonymous. Certain discriminatory practices contravene New York's public policy and also are forbidden by law (Executive Law, § 296). Section 290 (Executive Law) provides in part: "the legislature hereby finds and declares that practices of discrimination against any of its inhabitants because of race, creed, color or national origin are a matter of state concern, that such discrimination not only threatens the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state and threatens the peace, order, health, safety and general welfare of the state and its inhab-

itants." The matters referred to are of legitimate concern to government. The State has power to enact laws safeguarding its peace and security, including laws prohibiting discrimination (cf. *Matter of Delaney* v. *Conway*, 39 Misc 2d 499). Knowledgeable violation of State law and policy is a factor which properly may be considered by the licensing authority, an agency of government, in determining untrustworthiness. The State also has power to require licensing of brokers (*Roman* v. *Lobe*, 243 N. Y. 51) and to establish reasonable conditions for the maintenance of such license. The purpose of article 12-A in the licensing of brokers and salesmen is "to assure by means of licensing competency and the observance of professional conduct on the part of real estate brokers and salesmen" (*Matter of Sullivan Co.*, 289 N. Y. 110, 114). "The real estate broker is brought by his calling into a relation of trust and confidence" (*Roman* v. *Lobe, supra*, p. 54), and demonstrated misconduct in disregard of law and public policy may be considered in determining untrustworthiness.

The argument that respondent has not been delegated power under article 12-A to initially deal with discriminatory acts, because this power is vested in the State Commission for Human Rights, is to misunderstand or seek to confuse the issue before the court. The proceeding was not brought pursuant to the provisions of article 15 of the Executive Law. It is there provided that a violation of the provisions of article 15 constitutes a misdemeanor. The fact that certain actions may be expressly prohibited by one branch of the law upon pain of a specified penalty, does not preclude the consideration of such acts, if proved, in measuring the calibre of the actor to determine if he is a person to be trusted in dealing with the general public (*Matter of Kamper* v. *Department of State*, 26 A D 2d 697; Executive Law, § 300). Arbitrary action by the licensing authority is not protected from judicial review (Real Property Law, § 441-f) and would not find judicial support. As stated in *Matter of Chiaino* v. *Lomenzo* (26 A D 2d 469, *supra*), there should be such factual presentation concerning acts or conduct by the licensee or his agent as would warrant a conclusion of unreliability, and which establishes that any confidence or reasonable expectation of fair and unbiased dealing with the general public is misplaced.

There is a flexibility to the term "untrustworthiness", designedly so by legislative intent, for the Legislature could as easily have limited itself to the enumeration of specific acts. Instead, the Legislature left such determination to respondent after consideration of facts gathered at or from the required

hearing (cf. *Matter of Kamper* v. *Department of State, supra*; *Matter of Tegeler,* 23 A D 2d 917; *Matter of Frank* v. *Department of State,* 14 A D 2d 139; *Matter of Abel* v. *Lomenzo,* 25 A D 2d 104).

It is concluded there is substantial evidence to support the determination and respondent did not act in excess of his powers.

The determination appealed from should be confirmed, with costs and disbursements to respondent.

BOTEIN, P. J., BREITEL, RABIN and STEUER, JJ., concur.

Determination unanimously confirmed and the petition dismissed, with $50 costs and disbursements to the respondent.