**David C. GOLD, Plaintiff,**

**v.**

**John P. LOMENZO, individually and as Secretary of State of the Department of the State of New York, the Department of State of the State of New York and Howard R. Leary, individually and as Police Commissioner of the Police Department of the City of New York, Defendants.**

**No. 69 Civ. 3720.**

United States District Court
S. D. New York.

Sept. 18, 1969.

Norman J. Mordkofsky, New York City, for plaintiff.

Louis J. Lefkowitz, Atty. Gen. of New York, by Charles A. LaTorella, Jr., Asst. Atty. Gen., for defendants Lomenzo and Department of State.

## OPINION

POLLACK, District Judge.

The plaintiff has moved to enjoin the New York Department of State from enforcing an order dated July 24, 1969 suspending the plaintiff's real estate brokerage license for "demonstrated untrustworthiness" and fining him the sum of $250. The suspension ordered is to continue until plaintiff returns monies obtained from certain customers; deletes a certain clause in his Apartment Rental Agreement and agrees that his charge for renting apartments will not exceed one month's rent. The plaintiff's license was suspended following a departmental hearing duly held at which the plaintiff was represented by counsel. The hearing officer found among other things, that the defendant had charged unconscionably excessive fees to prospective apartment tenants. The findings were concurred in by the Secretary of State and the recommendations of the hearing officer were adopted and constituted the order referred to herein.

Contending that the licensing statute is unconstitutional the plaintiff invokes the jurisdiction of this Court under the Civil Rights Act, 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3) and (4) and the Declaratory Judgment Act, 28 U.S.C. § 2201, and in his affidavit in support of the motion for an injunction, plaintiff's counsel requests the convening of a three-judge court pursuant to 28 U.S.C. § 2281.

Section 441–c of Article 12–A of the Real Property Law of the State of New York, McKinney's Consol. Laws, c. 50, empowers the Department of State to revoke or suspend the license of a real estate broker on various grounds set forth in the statute including "demonstrated untrustworthiness or incompeten-

cy to act as a real estate broker or salesman." The constitutionality of this portion of the statute is questioned on the grounds that (i), no standards for determining "untrustworthiness" are set out; (ii), the section is overbroad; (iii), the section is unconstitutionally vague and deprives the plaintiff of due process; (iv), the plaintiff's liberty to contract has been infringed by the order since he must agree henceforth to charge only one month's brokerage commission and to return fees and monies heretofore collected under contracts with various clients.

Plaintiff further alleges that "by virtue of the unlawful and unbridled activity and conduct of * * * LOMENZO, [Secretary of State] minority groups have been incited unlawfully and improperly against the plaintiff and frenzied demonstrations and of a disorderly and violent nature have been taking place repeatedly in front of and in the area and even inside the plaintiff's place of business with the participants bearing placards branding the plaintiff with every conceivable sort of misdeed, all instigated by the said defendant [LOMENZO], thus effectively destroying the plaintiff's business and property rights, precluding customers and patrons from entering plaintiff's premises and even instilling fear in landlords to deal any further with the plaintiff * * * and these participant members of minority races are now engaging in a warfare against the plaintiff as if the matter were one of racial hatred and violence is imminent, thus, the defendant Police Commissioner of the City of New York has been joined as a defendant in the instant cause of action for the reason that the Police Department of the City of New York and its officers are agreeable to stand by and merely to prevent a racial riot when the underlying cause is the unlawful raging of an irresponsible administrative officer".

*The motion for a Three-Judge Court*

■ The task of the district judge before whom an application for a three-judge court has been made is "* * *

limited to determining whether the constitutional question raised is substantial, whether the complaint at least formally alleges a basis for equitable relief, and whether the case presented otherwise comes within the requirements of the three-judge statute". Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 1296, 8 L.Ed.2d 794 (1962).

Section 441–c of the Real Property Law has been administered by the New York courts in a number of instances but so far as can be ascertained has not been tested on the grounds of unconstitutionality raised herein.

Plaintiff attacks § 441–c as an unconstitutional delegation by the state legislature of its powers to a state agency, there being no legislative standards to guide the Secretary of State in his determination of a broker's "untrustworthiness".

■ The doctrine of unconstitutional delegation of legislative authority stems from the provisions in the Constitution mandating a separation of powers as between the legislative and executive branches of government. U.S.Const. art. I, § 1 and, art. I, § 8 ¶ 18. This doctrine is only applicable to delegation of federal power. There is no federal constitutional principle which prohibits a state legislature from delegating its powers to a state agency.

"The separation-of-powers principle, however pervasive it may be in American governments, is not in itself enforceable against the States as a matter of federal constitutional law."

Snell v. Wyman, 281 F.Supp. 853, 864 (S.D.N.Y.1968) (three-judge court).

"Of course, the Federal Constitution is not violated by a state delegation unless due process is denied."

1 K.C. Davis, Administrative Law ¶ 2.14, at 146 n. 41 (ed.1958).

■ Whether the standard of "untrustworthiness" violates the Constitution of the State of New York is a question properly to be litigated in the

state courts and raises no federal constitutional question.

Plaintiff has also attacked § 441–c as overbroad, and therefore unconstitutional under the due process clause of the fourteenth amendment.

Plaintiff does not explain the nature of this specific challenge to § 441–c. A contention that a statute is overbroad is ordinarily made where a statute proscribes certain conduct and imposes penalties on anyone who engages in this conduct. When the statute can be fairly read to proscribe legitimate conduct, that is, conduct protected by the Constitution (e. g., free speech) the statute is said to be overbroad. See, e. g., Zwickler v. Koota, 389 U.S. 241, 249–250, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). Plaintiff's attack on the statute in the case at bar as "overbroad" is not of this nature. No conduct is proscribed by § 441–c, but, rather, standards are set up under which an administrative agency is to judge the fitness of real estate brokers. Upon analysis the gravamen of plaintiff's charge of "overbreadth" is that under the broad sweep of the phrase "demonstrated untrustworthiness" the conduct of a real estate broker which may be wholly unrelated to his fitness to operate as a broker may be considered by the Secretary of State and result in the unwarranted suspension or revocation of his license. This contention is upon analysis intertwined with plaintiff's claim that the statute is an unconstitutional delegation of legislative authority, —a claim which the Court has already rejected—and the claim which will be discussed below, viz., that § 441–c is unconstitutionally vague and hence deprives plaintiff of his property without due process of law in violation of the fourteenth amendment to the Constitution.

Plaintiff's charge of vagueness lacks substantial merit. Initially, it should be noted, that plaintiff does not attack the New York Real Property Law for failing to accord procedural due process. The statutory scheme provides that before the Department of State may revoke or suspend a license, the licensee shall be notified in writing of the charges against him, and shall be given an opportunity to be heard in person or by counsel. Art. 12–A N.Y. Real Property Law § 441–e. Judicial review by an Article 78 proceeding (CPLR 7801 et seq.) of the determination of the Department of State is provided for in § 441–f. In addition, plaintiff does not claim that the standard of "untrustworthiness" is arbitrary and capricious in that it is unrelated to the ends sought to be accomplished by the legislation.

The gist of plaintiff's attack on the statute is that the standard of "untrustworthiness" is so vague that the Department of State is given free rein to suspend the licenses of real estate brokers.

The void for vagueness doctrine is one usually associated with criminal statutes, and the rubric is that a criminal statute is held to be so vague that it denies due process where it " * * * either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application * * * ". Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926).

Another formulation is that the Court must determine whether the statute's " * * * words and phrases are so vague and indefinite that any penalty prescribed for their violation constitutes a denial of due process of law." Champlin Ref. Co. v. Corporation Comm'n, 286 U.S. 210, 243, 52 S.Ct. 559, 568, 76 L.Ed. 1062 (1932).

The Supreme Court seemingly has held only one state statute in the non-criminal area void for vagueness. See, The Void-For-Vagueness Doctrine in the Supreme Court, 109 U.Pa.L.Rev. 67, 70 & n. 16 (1960).

There is no doubt that it is within the state's police powers to enforce standards of conduct within its borders relating to the health and welfare of its people. See, e. g., Barsky v.

Board of Regents, 347 U.S. 442, 449, 74 S.Ct. 650, 98 L.Ed. 829 (1954) (licensing of physicians). The state's legitimate concerns of course extend beyond initial licensing and the state may provide for the revocation and suspension of licenses for non-arbitrary reasons. *Id.* at 451, 74 S.Ct. 650.

Plaintiff does not contend that the standard of "untrustworthiness" is arbitrary, but that it is so broad and vague that it will be arbitrarily applied. However, the statute *itself* limits the consideration of the Department of State to factors relating to the fitness of an individual to act as a real estate broker.

§ 441–c

\* \* \* or has demonstrated *untrustworthiness* or incompetency *to act as a real estate broker* (emphasis added).

Moreover, the state courts have interpreted § 441–c to require that before suspension or revocation of a license on grounds of "demonstrated untrustworthiness", " \* \* \* there should be such factual presentation concerning acts or conduct by the licensee or his agent as would warrant a conclusion of unreliability, and which establishes that any confidence or reasonable expectation of fair dealing to the general public would be misplaced". In re Chiaino v. Lomenzo, 26 A.D.2d 469, 472, 275 N.Y.S.2d 658 (1st D. 1966); *accord,* In re Diona v. Lomenzo, 26 A.D.2d 473, 275 N.Y.S.2d 663 (1st D. 1966).

The New York courts have recognized that the state legislature intended to vest the Secretary of State with wide discretion in determining what should be deemed untrustworthy conduct, In re Chiaino v. Lomenzo, *supra,* 26 A.D.2d at 472, 275 N.Y.S.2d 658; In re Diona v. Lomenzo, *supra,* at 477, 275 N.Y.S.2d at 668, but the courts also acknowledge that "[a]rbitrary action by the licensing authority is not protected from judicial review". Id.

■ Complicated factors of judgment are called for in determining whether one is fit to operate in a profession affecting the public at large, and flexible standards are often the most desirable method of dealing with the problem. Any vagueness inherent in a term such as "untrustworthiness" is cured by the limiting construction given by the state courts to the statute, one which is in this particular case mandated by the terms of the statute itself.

In Barsky v. Board of Regents, 347 U.S. 442, 74 S.Ct. 650, 98 L.Ed. 829 (1954), a doctor's license was suspended under a New York state statute because he was convicted of the "crime" of failing to produce certain documents. The Supreme Court held that the term "crime" as construed and applied by the state courts was not unconstitutionally vague and therefore did not deprive the doctor of his right to pursue his chosen profession without due process of law.

"As interpreted by the New York courts, the provision is extremely broad in that it includes convictions for any crime in any court of competent jurisdiction within or without New York State. This may be stringent and harsh but it is not vague. The professional standard is clear. The discretion left to enforcing officers is not one of defining the offense. It is merely that of matching the measure of the discipline to the specific case." (*Barsky,* at 448, 74 S.Ct. at 654).

This case is different in that the professional standard of "untrustworthiness" is not defined by the statute, but is left to the application of the Secretary of State on a case by case basis. However, in a similar case involving the phrase "misconduct" in a statute regulating physicians, the Columbia Circuit Court held the term not to be unconstitutionally vague. Ladrey v. Commission on Licensure to Practice, 104 U.S. App.D.C. 239, 261 F.2d 68 (1958), cert. denied, 358 U.S. 948, 79 S.Ct. 351, 3 L.Ed. 2d 353 (1958). In that case the licensing board revoked the doctor's license on the grounds of "misconduct" because

he had illegally performed an abortion. The Court noted (at 71):

"Nor can we doubt that every medical practitioner knows fully that the performance of a criminal abortion is misconduct. He need not guess at the meaning of the term in view of his status and the Code which governs. 'The reason of the law, as indicated by its general terms, should prevail over its letter, when the plain purpose of the act will be defeated by strict adherence to its verbiage.' The purpose of the statute here is clear and calls for no further exploration into semantics. Congress intended to provide a remedial measure for the protection of the public, and 'misconduct' certainly included, and must have been known by a medical practitioner to have included, the performance of an illegal abortion. (footnotes omitted)."

In Schware v. Board of Bar Examiners, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed. 2d 796 (1957) the Court held that the standard of requiring that an applicant for the bar be of good "moral character" was not vague. In this particular case the applicant had been denied due process because in applying the permissible standards the state excluded the applicant where there was no evidentiary basis for their finding that he failed to meet the standards. Frankfurter, J., concurring, noted the following (at 249, 77 S.Ct. at 761):

" * * * a conception like that of 'moral character' * * * has shadowy rather than precise bounds. It cannot be that that conception—moral character—has now been found to be so indefinite, because necessarily implicating what are called subjective factors, that the States may no longer exact it from those who are to carry on 'the public profession of the law.' "

The standard in the case at bar is limited to untrustworthiness which reflects on the integrity of the licensee to operate as a broker, and therefore, as construed and applied, is not too broad or vague.

Two further "constitutional" attacks made by plaintiff are that the conditions imposed by the Secretary of State on the reinstatement of plaintiff's license infringe plaintiff's liberty to contract and impair his obligations of contract. The statute merely provides for revocation and suspension and thus plaintiff's attack is not on the statute but on the actions of the Department of State under the statute. Such an attack does not deal with the unconstitutionality of a statute and therefore does not meet the requirements for convening a three-judge court. 28 U.S.C. § 2281.

The Court concludes that the claims of unconstitutionality raised by the complaint herein are "plainly insubstantial"; they are "obviously without merit". Ex Parte Poresky, 290 U.S. 30, 32, 54 S.Ct. 3, 78 L.Ed. 152 (1933).

*The motion for a preliminary injunction*

The issue which remains for determination is whether the preliminary injunctive relief sought under § 1983 is warranted in the case at bar.

As previously noted, plaintiff has available to him an administrative remedy by way of an Article 78 proceeding (CPLR § 7801 et seq.) in the New York courts to review the determination of the Department of State which resulted in the revocation of his license. Art. 12–A N.Y. Real Property Law § 441–f. However, an aggrieved party suing under § 1983 of 42 U.S.C. need not exhaust his state remedies before seeking federal injunctive relief. See, e. g., King v. Smith, 392 U.S. 309, 312 & n. 4, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); McNeese v. Board of Educ. For Community Unit School Dist., 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Powell v. Workmen's Compensation Bd. of State of New York, 327 F.2d 131, 135 (2d Cir. 1964).

The plaintiff's charge that the Secretary of State abused his power un-

**10**

der the statute by imposing conditions upon the plaintiff which deprived him of his constitutional rights, fails to state a claim for relief under § 1983, and there is little, if any, probability that plaintiff will succeed on the merits of this charge.

Intentional and purposeful deprivation of civil rights must be alleged before a claim for relief is made out under § 1983 of the Civil Rights Act. See, e. g., Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944); Powell v. Workmen's Compensation Bd. of State of New York, 327 F.2d 131, 137 (2d Cir. 1964). If this were not the case, all instances in which a state administrative agency exceeded its powers or erred in the application of state law would result in litigation in the federal courts.

"The Constitution does not assure uniformity of decisions or *immunity from merely erroneous action, whether by the courts or the executive agencies of a state.*" Snowden v. Hughes, 321 U.S. 1, 15, 64 S.Ct. 397, 404 (1944) (Frankfurter, J., concurring) (emphasis added).

It is highly questionable whether the amended complaint herein sets forth some intentional and purposeful deprivation of constitutional rights. The plaintiff is bound to do more than merely express in conclusory style that the defendants have succeeded in depriving plaintiff of his rights.

On the record presently before the Court there is little probability of the success of plaintiff's suit, and balancing the conveniences, the possible detriment to the public if the injunction is issued and is ultimately proved unwarranted far outweighs the possible inconvenience to plaintiff in the complementary situation. No sufficient basis is shown to warrant preliminary injunctive relief.

Plantiff's motions for an order convening a three-judge court and for a preliminary injunction are each hereby denied.

So ordered.