David C. GOLD, Plaintiff,

v.

**John P. LOMENZO, individually and as Secretary of State of the Department of State of the State of New York, the Department of State of the State of New York and Howard R. Leary, individually and as Police Commissioner of the Police Department of the City of New York, Defendants.**

No. 69 Civ. 3720.

United States District Court,
S. D. New York.

July 15, 1970.

Norman J. Mordkofsky, New York City, for plaintiff.

Louis J. Lefkowitz, Atty. Gen. of New York, New York City, by Charles A. LaTorella, Jr., Asst. Atty. Gen., for John P. Lomenzo and the Department of State.

Before MOORE, Circuit Judge, and CROAKE and POLLACK, Judges.

## OPINION

POLLACK, District Judge.

A three-judge district court has been convened pursuant to 28 U.S.C. §§ 2281 and 2284 on the complaint of David C. Gold against John P. Lomenzo, individually and as Secretary of State of New York State, et al. The complaint seeks an injunction against the suspension of Mr. Gold's real estate brokerage license by the Secretary of State on the ground that this was not authorized by state law and unconstitutional on a variety of federal and state grounds. Defendant Lomenzo has moved to dismiss the suit as devoid of legal merit.

For the reasons given in the following opinion, this Court will abstain from reaching the merits of plaintiff's claims but will deny the motion to dismiss the suit at this time and will retain jurisdiction pending consideration of the matter by the New York State Courts and a final determination with respect to the authority of the Secretary under State law.

Plaintiff, David C. Gold, held a real estate broker's license issued under § 441 of the New York Real Property Law, McKinney's Consol.Laws, c. 50. On July 24, 1969 a hearing officer of the Department of State determined (after a full hearing) that Gold's real estate broker's license should be suspended for "demonstrated untrustwor-

thiness" within the meaning of § 441–c. (1).[1] This determination was concurred in by the Secretary of State. Suspension was ordered to commence on August 15, 1969 and to terminate only if Gold satisfied certain conditions, to wit: refunded to four clients amounts aggregating $585.85; filed statements that he had deleted an objectionable clause in his lease and that in the future he would not charge more than one month's rent as commission.

On September 2, 1969, plaintiff sought an injunction in the District Court, *pendente lite*, enjoining and restraining the Secretary of State from suspending his real estate broker's license, and sought an order convening a statutory court to consider the constitutionality of § 441 of the New York Real Property Law and the Secretary's application thereof.

The District Court denied a preliminary injunction and refused to convene a three-judge court. Gold v. Lomenzo, 304 F.Supp. 3 (S.D.N.Y.1969).

On appeal, the decision of the District Court was reversed. The Court of Appeals held that the claim that the limitation on Gold's fee was confiscatory raised a question to be administered by a three-judge court rather than by a single Judge. Gold v. Lomenzo, 425 F.2d 959 (2d Cir. 1970).[2]

Accordingly, on remand from the Court of Appeals, the District Court granted plaintiff's motion to convene a

---

1. Section 441–c.(1) of The New York Real Property Law reads as follows:
Powers of department. The department of state may revoke the license of a real estate broker or salesman or suspend the same, for such period as the department may deem proper, or in lieu thereof may impose a fine not exceeding five hundred dollars payable to the department of state, or a reprimand upon conviction of a violation of any provision of this article, or for a material misstatement in the application for such license, or if such licensee has been guilty of fraud or fraudulent practices, or for dishonest or misleading advertising, or

has demonstrated untrustworthiness or incompetency to act as a real estate broker or salesman, as the case may be.

2. The opinion of the Court of Appeals contains the following footnote (#3) reading in part:
It is of interest * * * that the decisions which support the necessity of convening a three-judge court in this case also strongly indicate that such a court, once convened, should abstain from deciding the merits until the state courts can decide whether the action taken was authorized by state law.

three-judge court pursuant to 28 U.S.C. §§ 2281 and 2284.

While review of the district court decision refusing to convene a three-judge court was pending before the Court of Appeals, plaintiff commenced an Article 78 proceeding in New York Supreme Court, Albany County, contesting the state suspension order. That proceeding was dismissed on the merits on December 30, 1969 by Mr. Justice De Forest C. Pitt, who ruled that the questioned statute was neither vague nor overbroad and that its application to plaintiff did not result in the impairment of contract. Upon reargument on February 13, 1970, Mr. Justice Pitt adhered to his original decision, stating among other things:

> It should, perhaps, be noted that the court in its original determination of this proceeding was not of the opinion that it was in any manner bound by the determination of the United States District Court in the companion litigation. References to the opinion of that court are to be considered as indicative of this court's approval of the rationale and law quoted.

Plaintiff filed a notice of appeal to the Appellate Division, Third Department, from the dismissal of the Article 78 proceeding, and that appeal is pending but has not as yet been perfected.

On October 31, 1969, the Department of State held a second hearing, after which plaintiff's license was revoked on the ground that he had continued to operate his brokerage business in violation of the Secretary's order of suspension.

On oral argument before the three-judge court plaintiff asserted that his license had by its terms expired on October 31, 1969.

Plaintiff did not bring an Article 78 proceeding in connection with the alleged revocation of October 31, 1969 and presumably the statute of limitations now bars any such proceeding. N.Y.C. P.L.R. § 217.

Under provisions of state law or regulation plaintiff may reapply one year after a revocation for a new license.

Art. 12–A, N.Y.Real Prop.Law § 441–c(4).

■ The instant complaint is not rendered moot on account of the subsequent revocation of plaintiff's license. Whether plaintiff's license lapsed or was revoked is of no moment, because plaintiff did not wait a year and filed an application for a new license which was denied by the Secretary of State. It is thus clear that the Secretary of State either considers that Gold's license was revoked (and hence no application will be entertained for a period of one year) or considers that the suspension order is still in effect and no license will be granted to Gold until he complies with the conditions attached to that order.

In either event, it is clear that the revocation of Gold's license resulted directly, or indirectly from the original suspension order. If Gold was in violation of an unconstitutional suspension order, it is doubtful whether under New York law the revocation could be valid.

■ What is, however, clear is that this Court should abstain from reaching the merits of the constitutional questions presented by plaintiff. If plaintiff pursues his Article 78 proceeding through to the New York Court of Appeals, a decision by that Court, which has heretofore never construed or interpreted the statute in question or the actions of the Secretary challenged herein, may well end the litigation and render unnecessary any decision on the federal constitutional questions.

A determination by the New York Court of Appeals could avoid a decision by the federal statutory court on the constitutional questions raised.

Plaintiff has contended that the suspension order for "demonstrated untrustworthiness" was improper because *inter alia*, (a) the commissions he charged and which were considered by the hearing officer were not excessive; (b) the clause in the lease agreement which the hearing officer found objectionable and ordered him to delete in the future was a clause suggested by the Secretary of

State; (c) the Secretary of State does not have the power to consider the amount of commissions charged by a broker in a determination of his trustworthiness because commissions are not regulated by statute or regulation.

Plaintiff has also attacked the conditions attached to the suspension order on the ground (among others) that the Secretary of State is not authorized by the legislation to fix brokerage commissions and cannot do so in carrying out the separate and distinct powers of licensing, suspension and revocation.

It is true that the New York Legislature has chosen not to regulate the commissions brokers may charge. The Secretary of State has similarly not chosen to regulate the amount of permissible commissions and has even noted in a pamphlet, "License Law for Brokers and Salesmen" (Feb. 1968 at p. 17), that the "commission or compensation of a real estate broker is not regulated by statute, nor is it legally fixed by the regulations of the real estate board in a particular community, as many suppose. The broker and his employer may agree upon any rate of compensation, or the method or time of payment thereof, that is mutually acceptable."

The New York Penal Law § 180.55 makes "rent gouging" a crime (misdemeanor) and in a decision upholding the constitutionality of that statute and construing it, the New York Court of Appeals noted that the Real Property Law permitted brokers to collect unregulated commissions for legitimate services. Monies collected unrelated to legitimate services were however held to be unlawful under that section of the Penal Law despite the absence of set fees. People v. Greenwald, 299 N.Y. 271, 86 N.E.2d 745 (1949).

Thus, People v. Greenwald recognizes the fact that there is no statute or regulation which limits the amount of brokerage commissions which can be charged. One can, however, be prosecuted for a misdemeanor, where fees unrelated to services are collected. The issue presented is whether under the statutory scheme, the Secretary of State has the power (a) to suspend a broker's license upon a finding that he has charged excessive commissions where no penal proceedings have been brought, or where, as in the case at bar, a Court dismissed a criminal proceeding on the merits, and (b) whether the Secretary of State, after suspending a license, can attach a condition limiting the commissions which the broker can charge to one month's rent.

The answer to this question is by no means clear. In no reported case does it appear that the Secretary of State attached such a condition limiting the allowable brokerage commission. Reasoning by analogy from the cases on racial discrimination holding that knowledgeable violation of state law and policy is properly considered in determining untrustworthiness, In re Diona v. Lomenzo, 26 A.D.2d 473, 275 N.Y.S.2d 663 (1st Dept. 1966); accord, In Re Birch v. Lomenzo, 31 A.D.2d 835, 298 N.Y.S.2d 281 (2d Dept. 1969); In Re Kamper v. Dept. of State, 26 A.D.2d 697, 272 N.Y. S.2d 808 (2d Dept. 1966), aff'd. on opinion below, 22 N.Y.2d 690, 291 N.Y.S.2d 804, 238 N.E.2d 914 (1968); it would appear that the State Appellate Division would sanction suspension for "untrustworthiness" on the grounds that a broker has been found to have violated the rent gouging statute. But query whether they would approve of a condition attached to the suspension limiting the fee in the future. Cf., In Re Edelstein v. Dept. of State, 16 A.D.2d 764, 227 N.Y. S.2d 987 (1st Dept. 1962).

This Court is certainly not in a position to determine whether the Secretary of State's actions in the case at bar were authorized by the legislature without any guidance from the highest Court in New York. This determination involves a careful analysis of the purposes of § 441, the interplay between that section and the Penal Law § 180.55, and precise definition of what powers are conferred on the Secretary of State under § 441. A decision must be made as to whether

the legislature intended to allow the Secretary of State to regulate fees in the absence of statutory and regulatory limitations on brokers' fees.

This federal three-judge court is certainly not in a position to determine the intent of the New York Legislature in this respect and any attempt to do so would undoubtedly give rise to needless friction with the state courts. The New York Court of Appeals has never construed the statute in question and should be given the initial opportunity to do so.

A determination by the New York Court of Appeals that the Secretary of State did not have the power to attach the disputed conditions to the suspension order will obviate the necessity of reaching the federal constitutional questions raised by those conditions. Moreover, even if the New York Court finds the conditions to be within the power of the Secretary, it will have the opportunity to pass upon the question of whether such condition is confiscatory under the State Constitution. Whether a brokerage commission of one month's rent is, in all instances, a fair non-confiscatory condition, is something which the state court should first pass upon because of the local policies which must be considered and weighed in ruling upon that question.

A determination by that Court, could very well, as indicated, end this litigation without the necessity of decision on the federal constitutional claims. This is a well recognized ground for abstention, and has not been in any way discredited by recent abstention cases. *See, e. g.,* Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970); Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); Harrison v. NAACP, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959); R.R. Comm'n of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). *Cf.* Atlantic Coast Line R. R. Co. v. Bhd. of Locomotive Eng'rs, 398 U.S. 281, 90 S. Ct. 1739, 26 L.Ed.2d 234 (1970).

After a careful review of the application, the briefs and pleadings, and after hearing argument, this Court, duly convened, is of the opinion that it should abstain from deciding the merits of this controversy until the state courts have finally decided that action taken was authorized by state law.

The Attorney General's motion to dismiss the complaint is hereby denied, without prejudice to an application at the proper time on the ground that this action has become moot and no longer presents a controversy within the jurisdiction of this Court to determine.

So ordered.