■ KRANZLER REALTY, INC., et al., Petitioners, v DEPARTMENT OF STATE OF THE STATE OF NEW YORK, Respondent.—Proceeding pursuant to CPLR article 78 to review a determination of the respondent New York State Department of State, dated October 17, 1978 and made after a hearing, which revoked the real estate broker's license of petitioner Josephs as representative broker of petitioner Kranzler Realty, Inc., and the salesperson license of petitioner Blumer and suspended the salesperson licenses of petitioners Rowe, Beaudette and Davis for three months. Petition granted to the extent that the determination is modified, on the law, by annulling so much thereof as found Josephs, Rowe, Beaudette and Davis guilty of certain charges, and dismissing said charges, and reducing the penalty imposed on Blumer to a three-month suspension of her license. As so modified, determination confirmed and petition otherwise dismissed, on the merits, without costs or disbursements. Petitioners are engaged in the real estate brokerage business and consist of Kranzler Realty, Inc. (Kranzler), Bennett M. Josephs, a broker, and salespersons Linda Davis, Helen Blumer, Susan Beaudette and Vi Rowe. Petitioners were charged with engaging in discriminatory steering practices pursuant to which they directed black prospective home buyers to Baldwin Oaks in Nassau County and white purchasers to other areas. Because of this alleged practice respondent found that the petitioners had demonstrated untrustworthiness (Real Property Law, § 441-c). Stripped to its essentials, the evidence upon which the respondent relied in order to sustain the charges was as follows: On April 24, 1977 *Linda Davis* took a black couple to several houses in Baldwin Oaks. Three months later, on July

22, 1977, when a white couple came to Kranzler looking for a house, she gave them only one listing in Baldwin Oaks. On May 3, 1977 *Vi Rowe* took a white woman to two homes but failed to take her to any homes in Baldwin Oaks although there were homes there which fit the description of the type of house she desired to purchase. On April 24, 1977 *Susan Beaudette* met with two white women, Elke Bryan and Karen Samuel. Bryan was looking for an all brick ranch house near the Southern State Parkway. Beaudette had five listings in Baldwin Oaks. Bryan desired to see one of them but only upon her insistence did Beaudette show one of the houses to her. On June 2, 1977 *Helen Blumer* took June K. Loercher to see several houses but failed to take her to any houses in Baldwin Oaks. The type of house Loercher asked for was in Baldwin Oaks and Blumer had at least one listing in Baldwin Oaks which fit Loercher's description. When Loercher inquired directly about Baldwin Oaks, Blumer referred to the fact that it was integrated. On June 4, 1977 Loercher telephoned Blumer to inquire whether any of the houses she had seen on June 2, 1977 were still available so that she could bring her husband to see them. Blumer responded that the houses were still available. On June 5, 1977 Loercher returned to Kranzler accompanied by a black man posing as her husband. Blumer then reported that the houses were sold and started discussing properties in Baldwin Oaks. From the foregoing, as well as some alleged ambiguous comments by Josephs about maintaining the "status quo" in Baldwin, respondent found a pattern of racial steering at Kranzler for which it determined *Bennett M. Josephs* should be held responsible. In our view, except as to Blumer, there is a lack of substantial evidence to support the charges. The evidence relied upon by the respondent shows incidents of an inconclusive and isolated nature which can at most be deemed suspicious. As to Josephs there is, therefore, no pattern of behavior for which he can be held responsible. Nor can he be held responsible for Blumer's acts since there is no evidence that he had actual knowledge of any improper activities (see *Matter of Hartman v Lomenzo,* 51 AD2d 525; *Matter of Birch v Lomenzo,* 31 AD2d 835; *Matter of Diona v Lomenzo,* 26 AD2d 473). However, regarding Blumer we find that the evidence sustains the charge against her. Her clear reference to racial matters as well as the fact that she suddenly found that houses located in places other than Baldwin Oaks were unavailable once Loercher appeared with a "black husband", combined with her attempt to then sell them property in Baldwin Oaks, are sufficient to support the conclusion that her conduct was not happenstance. While there is substantial evidence to sustain the charge against Blumer we find that the penalty imposed upon her, revocation of her license, which amounts to a denial of her livelihood, is so disproportionate to her misconduct in light of all the circumstances as to be shocking to one's sense of fairness (see *Matter of Pell v Board of Educ.,* 34 NY2d 222). She has been a salesperson for 13 years. There is no indication of prior violations committed by her. Moreover, the offense she is charged with here is a single one (cf. *Matter of Birch v Lomenzo, supra).* Accordingly, we have reduced the penalty to a three-month suspension of her license. Damiani, J. P., Titone, Margett and Martuscello, JJ., concur.