■ In the Matter of HERBERT SCHIMKUS et al., Petitioners, v GAIL S. SHAFFER, as Secretary of State of the State of New York, Respondent.—Proceeding pursuant to CPLR article 78 to review a determination of the Secretary of State, dated June 26, 1987, which, after a hearing, suspended the real estate broker's license of the petitioner Herbert Schimkus for a period of two months on the ground that he had demonstrated untrustworthiness as a real estate broker.

Adjudged that the determination is confirmed, without costs or disbursements, the petition is denied, and the proceeding is dismissed on the merits.

In the underlying complaint, the Department of State, Division of Licensing Services accused Herbert Schimkus, duly licensed as representative broker of Schimkus Realty, Ltd., of discrimination based on race, racial steering and misrepresentations arising out of an investigation conducted by the Department of State concerning complaints instituted against

certain of its licensees. In furtherance of these efforts to ascertain whether licensed real estate brokers were engaging in untrustworthy actions as evidenced by racial steering activities in the rental or sale of homes, several persons employed by the Department of State held themselves out as prospective home buyers and, posing as married couples, visited several brokers' offices in Nassau County. On September 22, 1986, the Department sent both a white and a black test couple of similar financial means and needs to Schimkus Realty for the purpose of viewing certain advertised homes in Franklin Square, West Hempstead and Lakeview. Of the geographic locations in which the subject homes were situated, the first two were in communities in which the racial composition of the residents was in excess of 97% white while that of the third was in excess of 88% black.

The black couple posing as prospective home purchasers arrived at Schimkus Realty at approximately 2:15 P.M. on September 22, 1986. When they requested a tour of a residence in Franklin Square which had been the subject of a published advertisement, the petitioner responded that that would be impossible since the owners were out of town and he was not in possession of the key. In response to the couple's request to see other properties in unspecified locations, Schimkus referred to his files and indicated that he had no listings in Franklin Square for under $200,000. At the hearing the respondent introduced evidence to the effect that other suitable homes were in fact available in the requested price range. The couple thereupon inquired about certain West Hempstead and Lakeview properties and asked to view either one of them. Schimkus replied that the West Hempstead listing was undesirable since it was situated in a bad school district and the house itself was a "handyman's special". With respect to the Lakeview property, Schimkus admitted that it was in a "low income bracket" and that it was probably more suitable for investors but nevertheless offered to take the couple to view it. Upon arriving at the Lakeview house, they observed that the surrounding neighbors were of a minority background. After the couple expressed a disinterest in the Lakeview house, Schimkus agreed to contact them with regard to any future development on the Franklin Square house. Although the couple left a telephone number at which they could be reached, they had no further communication with Schimkus.

The white test couple arrived at Schimkus Realty at approximately 3:00 P.M. on September 22, 1986, while the petitioner

Herbert Schimkus was out of the office. At their request, an employee of Schimkus Realty took them to view the Franklin Square and West Hempstead properties.

At the conclusion of the hearing, the Administrative Law Judge rendered the following opinion:

"The complainant met its burden by showing that black testers who were to all appearances financially qualified, upon making inquiry about the house in West Hempstead were falsely told that the house was in bad physical condition and was located in a bad school district.

"Respondent's attempt to rebut any showing of discrimination with the argument that he honestly believed that he could not show the Franklin Square home is misplaced, as while there was no discrimination with regards to that home in particular, the intent to discriminate is highlighted by his false representation to the black testers that there were no other Franklin Square listings in their price range available in his office. Further support for the finding of discrimination is to be found in his taking the black testers to Lakeview, a [predominantly] black area, to view a house which he deemed to be undesirable, while failing to take them to West Hempstead, a [predominantly] white area, to view another house that he viewed as undesirable. If the undesirability of the house was the reason for not showing it, he would have shown neither house".

Accordingly, a determination was made that Herbert Schimkus had demonstrated untrustworthiness as a real estate broker in consequence of which his broker's license was suspended, pursuant to Real Property Law § 441-c, for a period of two months commencing August 1, 1987. By order entered August 19, 1987, the matter was transferred to this court pursuant to CPLR 7804 (g) and the respondent's order of suspension was stayed pending disposition of this proceeding.

Pursuant to Real Property Law article 12-A, the Department of State is authorized to regulate the real estate industry by the licensing of real estate brokers. Real Property Law § 441-c (1) empowers the Department of State, *inter alia*, to suspend or revoke the license of, or, in lieu thereof, to impose a fine upon any real estate broker or salesman if, *inter alia*, "such licensee had been guilty of fraud or fraudulent practices, or for dishonest or misleading advertising, or has demonstrated untrustworthiness or incompetency to act as a real estate broker or salesman". "This statute is grounded upon the strong public interest in protecting the public at large

from unreliable and untrustworthy real estate brokers" *(Matter of Stowell v Cuomo,* 52 NY2d 208, 211-212).

Courts have been wont to take cognizance of the flexibility inherent in the term "untrustworthiness" and have been careful not to fashion rigid definitions thereof *(Matter of Gold v Lomenzo,* 29 NY2d 468, 476). Moreover, the Legislature has accorded the Secretary of State wide discretion in ascertaining what should be deemed untrustworthy conduct and in fashioning appropriate penalties therefor *(Matter of Facey v Department of State,* 132 AD2d 698, *lv denied* 70 NY2d 611; *Matter of Chiaino v Lomenzo,* 26 AD2d 469, 472).

Upon our review of the record, we find that the respondent's determination that the petitioners failed to accord the black test couple treatment equal to that of the white test couple thereby demonstrating untrustworthiness on the part of the real estate broker, was supported by substantial evidence *(Matter of Butterly & Green v Lomenzo,* 36 NY2d 250; *Matter of Diona v Lomenzo,* 26 AD2d 473; *Matter of Kamper v Department of State,* 26 AD2d 697, *affd* 22 NY2d 690). Mollen, P. J., Mangano, Kunzeman and Weinstein, JJ., concur.