In the Matter of TAYSEER RAZIK et al., Petitioners, v NEW YORK STATE DEPARTMENT OF STATE DIVISION OF LICENSING SERVICES, Respondent. [875 NYS2d 184]—

Proceeding pursuant to CPLR article 78 to review so much of a determination of the New York State Department of State dated September 5, 2008, as affirmed a determination of an administrative law judge dated July 31, 2008, made after a hearing, that the petitioners demonstrated untrustworthiness and incompetency insofar as they violated their obligations pursuant to Real Property Law § 441 (1) (b) and 19 NYCRR 175.21 (a) and, pursuant to Real Property Law § 441-c, suspended the license of the petitioner Tayseer Razik to act as a corporate real estate broker and the license of the petitioner ReMax Universal Real Estate to operate a principal real estate brokerage office for a period of two months commencing on September 15, 2008.

Adjudged that the determination is confirmed insofar as reviewed, the petition is denied, and the proceeding is dismissed on the merits, with costs.

Hyunsook Kim was a salesperson working in the licensed principal real estate brokerage office of the petitioner ReMax Universal Real Estate (hereinafter ReMax), managed by the petitioner Tayseer Razik, a licensed corporate real estate broker. Kim entered into. a brokerage agreement with a seller of a house in Douglaston which contained, inter alia, a provision for a 2% commission upon the sale of the house, as well as a provision for a 4% commission upon the sale if certain conditions were satisfied.

At the hearing before the New York State Department of State, the seller contended that it was understood that the brokerage commission was to be 2%, with the 4% clause functioning as a cap on the commission amount. Upon the closing of the sale of the house, the seller tendered a check to Kim in the sum of $13,800, representing 2% of the sales price. Kim objected, contending that another $13,800 was due, citing the 4% commission clause. Upon the seller's refusal to pay more than the 2% already paid, Kim consulted with Razik about suing the seller for the balance of the brokerage fee allegedly due under the brokerage agreement. Razik contended at the hearing that he attempted to deter Kim from commencing an action, explaining that such a course of conduct was bad for business, but upon Kim's insistence, Razik advised her to speak to Razik's business attorney about the advisability of commencing an action.

ReMax and Kim together commenced an action against the seller in the Civil Court, Queens County, to recover the additional 2% brokerage commission fee. After a nonjury trial, the Civil Court directed the entry of judgment in favor of the seller, holding that no additional brokerage commission fees were due. The Civil Court explained that, to the extent that the terms of the brokerage agreement may have been ambiguous, the ambiguity must be construed against the drafter. Since real estate brokers owe a fiduciary duty to their clients, the court held that it was a breach of that duty to draft a brokerage agreement providing for differing commission clauses and to seek to enforce the clause with the higher commission.

The seller thereafter filed an administrative complaint with the New York State Department of State (hereinafter the DOS). After a hearing on the administrative complaint was conducted before an administrative law judge (hereinafter the ALJ), Razik was found to have demonstrated untrustworthiness and incom-

petence by virtue of his failure to have supervised Kim, in violation of Real Property Law § 441 (1) (b) and 19 NYCRR 175.21, and ReMax was charged with responsibility for Razik's conduct. The ALJ found that Kim failed to properly fill out her brokerage agreement with the seller, and that Razik failed to advise Kim that, pursuant to Real Property Law § 442-a, she was not permitted to sue a client directly, and knowingly facilitated her in wrongfully commencing the improper Civil Court action.

A real estate broker is responsible for the wrongful acts of a salesperson in the broker's employ if the broker is found to have actual knowledge of such acts or retains the benefits of a transaction wrongfully negotiated by such salesperson after notice of the misconduct (*see Matter of Sperte v Shaffer*, 111 AD2d 856 [1985]; *Matter of Diona v Lomenzo*, 26 AD2d 473 [1966]).

There was substantial evidence to support the findings of the ALJ with regard to Razik's failure to supervise Kim, leading to the improper commencement of an action against a customer (*see* CPLR 7803 [4]).

Moreover, the ALJ was entitled to consider the past disciplinary actions brought against Razik in fashioning a penalty for Razik's violations in this matter (*see Matter of Barnes v Selsky*, 278 AD2d 707 [2000]). The DOS has wide discretion in fashioning penalties for a broker whose conduct has been deemed untrustworthy (*see Matter of Schimkus v Shaffer*, 143 AD2d 418 [1988]; *Matter of Facey v Department of State*, 132 AD2d 698 [1987]).

The suspension of ReMax's and Razik's licenses for a period of two months was not so disproportionate to the offense as to shock the judicial conscience (*see Matter of Featherstone v Franco*, 95 NY2d 550, 554 [2000]; *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222 [1974]; *Matter of Gudinsky v Cuomo*, 64 AD2d 899 [1978]).

The petitioners' remaining contentions are without merit. Mastro, J.P., Skelos, Dillon and Eng, JJ., concur.