425 F.2d 959
 David C. GOLD, Plaintiff-Appellant,
v.
John P. LOMENZO, individually and as Secretary of State of
the Department of State of the State of New York, The
Department of State of the State of New York and Howard R.
Leary, individually and as Police Commissioner of the Police
Department of the City of New York, Defendants-Respondents.
 No. 346, Docket 34144.
United States Court of Appeals Second Circuit.
 Argued Oct. 17, 1969.
Decided Jan. 22, 1970.
 
 Norman J. Mordkofsky, New York City, for plaintiff-appellant.
 Charles A. LaTorella, Jr., Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City, of counsel), for defendants-respondents.
 Before FRIENDLY, HAYS and ANDERSON, Circuit Judges.
 FRIENDLY, Circuit Judge:
 
 
 1
 David C. Gold, the holder of a real estate broker's license issued under 441 of the New York Real Property Law, McKinney's Consol.Laws, c. 50, brought this action in the District Court for the Southern District of New York. Federal jurisdiction was alleged under the civil rights jurisdictional statute, 28 U.S.C. 1343(3)-(4). He sought to enjoin the enforcement of an order of the New York Secretary of State suspending his license and imposing conditions on its restoration.
 
 
 2
 The Secretary found that Gold had charged excessive commissions and had used a form of lease which bound the tenant to take the apartment even if it was occupied and unavailable at the time scheduled for the lease to begin, so long as the apartment became available within 30 days thereafter. The Secretary concluded that these acts demonstrated 'untrustworthiness' within the meaning of 441-c, subd. 1 of the Real Property Law, which authorizes him to revoke or suspend a broker's license or to impose a fine or reprimand
 
 
 3
 'upon conviction of the licensee of a violation of any provision of this article, or for a material misstatement in the application for such license, or if such licensee has been guilty of fraud or fraudulent practices, or for dishonest or misleading advertising, or has demonstrated untrustworthiness or incompetency to act as a real estate broker or salesman, as the case may be.'
 
 
 4
 The Secretary accordingly suspended Gold's license for three months, or in lieu thereof imposed a fine of $250, and further provided that the license should not be restored until Gold had refunded to four clients amounts aggregating $585.85 and had filed statements that he had deleted the objectionable clause in his lease and that in the future he would not charge more than one month's rent as a commission.
 
 
 5
 Gold's argumentative and discursive complaint attacked the statute and the Secretary's order on a variety of grounds under the federal constitution and state law. He moved for the convening of a three-judge court and for a temporary injunction. Considering that the complaint raised no substantial question as to the constitutionality of 441-c, subd. 1 as written and that the attacks on the terms of the Secretary's order concerning the form of lease and future charges for commissions were not grounded upon the unconstitutionality of a statute, 28 U.S.C. 2281,[1] the district judge declined to request the convening of a three-judge court. 304 F.Supp. 3, 9. With respect to the claims which he regarded as within his jurisdiction as a single judge, he thought that plaintiff's probability of success was insufficient to counter the detriment to the public if an injunction pendente lite were to prove unwarranted, and consequently denied it. We refused to stay his order but expedited the appeal.
 
 
 6
 The first question, not argued to us, is whether federal jurisdiction of the action existed under 28 U.S.C. 1343(3). As stated in Eisen v. Eastman, 421 F.2d 560 (2 Cir. 1969), a challenge to the revocation of a license to engage in an occupation 'can be viewed about equally well as complaining of a deprivation of the personal liberty to pursue a calling of one's choice or of the profits or emoluments deriving therefrom.' Since we are content to follow the prevailing view sustaining civil rights jurisdiction in such cases, which was there noted, we need not consider whether Gold's unsubstantiated claim for damages of $100,000 would satisfy the requirement of 28 U.S.C. 1331 as to jurisdictional amount.
 
 
 7
 We next encounter the issue of our appellate jurisdiction, one of the obscurities of the three-judge court statute that has been correctly described as 'so complex as to be virtually beyond belief.' ALI, Study of the Division of Jurisdiction Between State and Federal Courts 332 (1969). As one commentator has noted, 'A literal reading of (28 U.S.C.) 1253 and 1291-92 suggests that jurisdiction to review the decision whether three judges are required depends upon whether three judges were in fact required.' Currie, Federal Courts 552 (1968). On the other hand, in Stratton v. St. Louis S.W. Ry., 282 U.S. 10, 51 S.Ct. 8, 75 L.Ed. 135 (1930), the Supreme Court held that if a single judge takes action on the merits in a case appropriate for three judges, neither the Supreme Court nor the court of appeals has jurisdiction of an appeal, the proper remedy being an application to the Supreme Court for a writ of mandamus. In Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 716, 82 S.Ct. 1294, 1296, 8 L.Ed.2d 794 (1962), however, the Court held that 'Stratton does not stand for the broad proposition that a court of appeals is powerless ever to give any guidance when a single judge has erroneously invaded the province of a three-judge court,' and subsequent cases such as Schackman v. Arnebergh, 387 U.S. 427, 87 S.Ct. 1622, 18 L.Ed.2d 865 (1967) appear to be continuing the drift to the position that if a court of appeals does not exactly have jurisdiction of an appeal such as this, it has something sufficiently similar to enable it to reverse for the convening of a three-judge court.[2] See also Bell v. Waterfront Commission, 279 F.2d 853 (1960).
 
 
 8
 Without intimating any view with respect to Gold's other contentions, we find his allegation that the level of commissions prescribed by the Secretary's order is confiscatory presents a sufficiently substantial constitutional issue to require the convening of a three-judge court. Apparently misled by the letter of the reference in 28 U.S.C. 2281, see fn. 1, to 'the unconstitutionality of such statute,' the district judge appears to have disregarded the long settled rule that it applies to challenges of the constitutionality of administrative orders under admittedly constitutional statutes. Oklahoma Natural Gas Co. v. Russell, 261 U.S. 290, 292, 43 S.Ct. 353, 67 L.Ed. 659 (1923). Gold's attack on the level of the commissions seems indistinguishable from claims by railroads and other public utilities that state administrative orders are depriving them of their property without due process of law. See Railroad Commission v. Pullman Co., 312 U.S. 496, 498, 61 S.Ct. 643, 85 L.Ed. 971 (1940); Alabama Public Service Commission v. Southern Ry., 341 U.S. 341, 343 n. 3, 71 S.Ct. 762, 95 L.Ed. 1002 (1951); see also Martin v. Creasy, 360 U.S. 219, 221, 79 S.Ct. 1034, 3 L.Ed.2d 1186 (1959). However the doctrines of Ex parte Collins, 277 U.S. 565, 48 S.Ct. 585, 72 L.Ed. 990 (1928), Ex parte Bransford, 310 U.S. 354, 60 S.Ct. 947, 84 L.Ed. 1249 (1940), and Phillips v. United States, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800 (1941) may operate to restrict three-judge courts to 'a limited class of cases of special importance' in other areas, Ex parte Collins, supra, 277 U.S. at 567-569, 48 S.Ct. at 586, it is beyond dispute that challenges to rate orders must be heard by a three-judge court. Oklahoma Natural Gas Co. v. Russell, supra, 261 U.S. at 292, 43 S.Ct. 353. It has not been generally supposed that an attack on the constitutionality of an order relating to a utility could be reviewed by a single judge simply because the utility did not operate state-wide. See Western & Atlantic R.R. v. Railroad Comm., 261 U.S. 264, 43 S.Ct. 252, 67 L.Ed. 645 (1923), but see Hatfield Bailleaux, 290 F.2d 632 (9 Cir. 1961). Moreover, although the order here relates in terms solely to Gold's commission, it would doubtless have at least an in terrorem effect on all real estate brokers.[3]
 
 
 9
 Having concluded that the district judge was without jurisdiction to deny the preliminary injunction,[4] we vacate that order, reverse the order refusing to call a three-judge court, and remand the case for further proceedings consistent with this opinion. No costs.
 
 HAYS, Circuit Judge (dissenting):
 
 10
 I do not believe that there exists a proper basis for assuming federal jurisdiction over this action. The action is clearly not one involving a deprivation of those personal liberties which alone justify the invocation of 1343(3) as a basis for jurisdiction.
 
 
 11
 In Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969) this court said that cases involving denials or revocations of licenses or discharges from public employment present difficulty and 'can be viewed about equally well as complaining of a deprivation of the personal liberty to pursue a calling of one's choice or of the profits or emoluments deriving therefrom.' We are now told that since it is the prevailing view to sustain civil rights jurisdiction in such cases, jurisdiction over the present action is clear. Yet the cases which form the basis for the view expressed in Eisen, cases where jurisdiction was predicated upon 1343(3), involved situations more clearly concerned with the deprivation of personal liberties than does the present suit.[1]
 
 
 12
 This court in Eisen, and in McCall v. Shapiro, 416 F.2d 246 (2d Cir. 1969) has clearly reaffirmed its adherence to the rule of Hague v. CIO, 307 U.S. 496, 59 S.Ct. 954 (1939).
 
 
 13
 Gold's complaint charges only that his license was suspended as a result of the pursuit of improper economic regulatory policies by the Secretary of State. The allegations that the Secretary through his actions has been instrumental in inciting disruptive demonstrations at Gold's place of business are too vague and conclusory to serve as a predicate for 1343(3) jurisdiction. Powell v. Workmen's Compensation Bd., 327 F.2d 131, 137 (2d Cir. 1964). Nor does he charge that the proceedings leading to his license suspension failed to accord him procedural due process, and an examination of the order suspending him indicates that there would be little merit in such a charge. Finally, Gold may have his license restored by taking steps which injure him only in his property-- restoration of money taken in as fees and agreement to charge no more than a month's rent as a finder's fee in the future. This, then, is quite a different situation from that presented in Birnbaum v. Trussell, 371 F.2d 672 (2d Cir. 1966) where the removal of a doctor from a hospital staff position under charges of race prejudice was bound to permanently injure the physician in his medical career. In my view, these considerations necessarily lead to the conclusion that this case is not one of those where the right or immunity alleged to be violated 'is one of personal liberty, not dependent for its existence upon the infringement of property rights.' Hague v. CIO, supra, 307 U.S. at 531, 59 S.Ct. at 971; Eisen v. Eastman, supra; McCall v. Shapiro, supra.
 
 
 14
 Furthermore, although Gold might have attempted to satisfy the $10,000 jurisdictional amount of 28 U.S.C. 1331 (1964) by showing the decrease in net worth of his real estate business which would be caused by his adherence to the maximum fee limitation, his unsubstantiated claim for damages in the amount of $100,000 lacks sufficient specificity in this regard. See McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 181, 56 S.Ct. 780, 80 L.Ed. 1135 (1936).
 
 
 
 [1]
 'An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title.'
 
 
 [2]
 Since the order denying a preliminary injunction is appealable to us, 28 U.S.C. 1292(a), we need not decide whether the denial of a three-judge court, standing alone, would be sufficiently 'final' to enable us to review it under 28 U.S.C. 1291
 
 
 [3]
 It is of interest mainly to collectors of legal curiosa that the decisions which support the necessity of convening a three-judge court in this case also strongly indicate that such a court, once convened, should abstain from deciding the merits until the state courts can decide whether the action taken was authorized by state law. Railroad Commission v. Pullman Co., supra, 312 U.S. at 499-501, 61 S.Ct. 643; Alabama Public Service Commission v. Southern Ry., supra, 341 U.S. at 349-351, 71 S.Ct. 762; Martin v. Creasy, supra, 360 U.S. at 224-225, 79 S.Ct. 1034; cf. England v Louisiana Medical Examiners, 375 U.S. 411, 415 n. 5, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964); Zwickler v. Koota, 389 U.S. 241, 249 n. 11, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). The absurdity is all the greater in light of the fact that here, as is usually the case these days, the demand for three judges was made by the plaintiff and resisted by the state, for whose benefit the three-judge provision was enacted. See ALI, Study of the Division of Jurisdiction between State and Federal Courts, supra, at 331. Indeed, this case is one more illustration of the need for speedy action by Congress to revise the three-judge statutes without awaiting consideration of the entire ALI proposal
 
 
 [4]
 Despite their apparently contrary wording, the three-judge statutes have long been held to apply to the denial as well as the grant of relief. Ex parte Metropolitan Water Co., 220 U.S. 539, 31 S.Ct. 600, 55 L.Ed. 575 (1911)
 
 
 [1]
 Some of these cases, where the court assumes jurisdiction, but finds no wrong within the purview of 1983, see, e.g., Berry v. Allen, 411 F.2d 1142 (6th Cir. 1969), or where no reference at all is made to Hague v. CIO, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939), see Cobb v. City of Malden, 202 F.2d 701 (1st Cir. 1953), can only be explained as instances where the court fails to take into account Hague's interpretation of 1343(3)
 In Cobb, where it was alleged that city officials had impaired the obligations of teachers' contracts by failing to appropriate funds, the court assumed jurisdiction on the authority of Bomar v. Keyes, 162 F.2d 136 (2d Cir.), cert. denied, 332 U.S. 825, 68 S.Ct. 166, 92 L.Ed. 400 (1947), alone, with no citation to the Hague case at all. Yet Bomar involved a quite different situation, for there the action was based on a teacher's discharge allegedly because of displeasure at the teacher's assumption of federal jury duty.