Larry McMILLAN et al., Plaintiff-
Appellant,

Mitchell Garlick et al., Intervenor-
Plaintiff-Appellant,

v.

The **BOARD OF EDUCATION OF** the
**STATE OF NEW YORK** et al.,
Defendants,

and

The Department of Education of the State
of New York and Edward Nyquist as
Acting Commissioner of Education of
the State of New York, Defendants-Ap-
pellees.

No. 901, Docket 34709.

United States Court of Appeals,
Second Circuit.

Argued July 8, 1970.

Decided Aug. 3, 1970.

John C. Gray, Jr., New York City
(Betty Elder, New York City, and Wil-
liam B. Haley, Long Island City, of coun-
sel), for appellants.

John DeWitt Gregory, New York,
City, Community Action for Legal Serv-
ices, Inc.

Reginald S. Matthews, Jamaica, N. Y.,
for appellants.

Marttie L. Thompson, New York City,
MFY Legal Services, Inc., for appellant
Garlick.

Phillip Weinberg, Asst. Atty. Gen.
(Louis J. Lefkowitz, Atty. Gen. of New

York, New York City, and Samuel A. Hirshowitz, First Asst. Atty. Gen. and Mortimer Sattler, Asst. Atty. Gen., of counsel), for appellees.

Before FRIENDLY, SMITH and HAYS, Circuit Judges.

FRIENDLY, Circuit Judge:

This appeal requires us to determine whether the claims under the equal protection clause of the Fourteenth Amendment asserted in this action under the Civil Rights Act, 42 U.S.C. § 1983, and its jurisdictional implementation here relevant, 28 U.S.C. § 1343(3), with respect to § 4407 of the New York Education Law, McKinney's Consol.Laws, c. 16, are sufficiently substantial that the district judge should have asked for the convening of a court of three judges pursuant to 28 U.S.C. §§ 2281 and 2284.

The procedural history, in the District Court for the Southern District of New York, is rather complex. The action was brought on behalf of three children, Larry McMillan, Steven Fournier and Teddy Sola, all of whom had been diagnosed as having suffered brain injuries. The defendants were the Board of Education of New York City; Bernard Donovan, then the City's Superintendent of Schools; Marcus S. Arnold, the City's Director of Education for the Physically Handicapped; the New York State Department of Education; and Edward Nyquist, the State's Acting Commissioner of Education. The complaint alleged that, as empowered by § 4404 of the State's Education Law,[1] New York City had instituted some 132 classes serving approximately 745 brain-injured children, but that some 309 such children

---

1. The pertinent provisions are:

2. a. The board of education of each city and of each union free school district shall be required to furnish suitable education facilities for handicapped children by means of home-teaching, transportation to school or by special classes. The need of the individual child shall determine which of such services shall be rendered. Where there are ten or more handicapped children who can be grouped homogeneously in the same classroom for instructional purposes such board shall establish such special classes as may be necessary to provide instruction adapted to the mental attainments and physical conditions of such children.

b. Provided, however, that in each city or union free school district in which schools for handicapped children exist or may hereafter be established, which are incorporated under the laws of the state and are found by the board of education to be adequate to provide instruction adapted to the mental attainments and physical conditions of such children, the board of education shall not be required to supply additional special classes for the children so provided for. The boards of education of such cities or union free school districts are hereby authorized and empowered to contract with such schools for the education of such children in special classes therein.

3. The board of education or board of trustees of each school district, which contains less than ten handicapped children shall have power to furnish suitable educational facilities for such children by means of home-teaching or transportation to school. The needs of the individual child shall determine which of such services shall be rendered. Such board is also authorized and empowered to contract with the board of education of another school district, a board of cooperative educational services or a vocational education and extension board of a county for the education of such children in special classes organized in the schools of such district, of such board of cooperative educational services or of such vocational education and extension board with which such contract is made.

4. The board of education of each school district in which there are ten or more handicapped children who can be grouped homogeneously in the same classroom for instructional purposes shall establish such special classes as may be necessary to provide instruction adapted to the mental attainments of such children from their fifth birthday until the end of the school year during which they attain their twenty-first birthday, or shall contract with the board of education of another school district, a board of cooperative educational services or a vocational education and extension board for the education of such children, under regulations to be established by the commissioner of education.

were on the waiting list and that children remained on this for substantial periods. The complaint then referred to § 4407, subd. 1 of the Education Law:

§ 4407. Special provisions relating to instruction of certain handicapped children

1. When it shall appear to the satisfaction of the department that a handicapped child, who, in the judgment of the department can reasonably be expected to benefit from instruction, is not receiving such instruction because there are no adequate public facilities for instruction of such a child within this state because of the unusual type of the handicap or combination of handicaps, the department is authorized to contract with an educational facility located within or without the state, which, in the judgment of the department, can meet the needs of such child, for instruction of such child in such educational facility, and the department is further authorized to expend for such purpose a sum of not to exceed two thousand dollars per annum for each such pupil.

It alleged that Larry McMillan and Teddy Sola had been denied admission to the City's special classes for lack of available space; the complaint was less clear why Steven Fournier was not in a City class. But it did allege that all three plaintiffs had attended private schools; that the tuition was in the neighborhood of $3000 a year; and that their parents lacked the means to provide the $1000 required over and above the maximum state grant of $2000 permitted by § 4407.[2] The limit was alleged to deprive plaintiffs of their right to an elementary education in contravention of the equal protection clause of the Fourteenth Amendment. Plaintiffs sought to maintain the suit as a class action on behalf of all persons similarly aggrieved by the City's failure to provide classes adequate for educable brain-injured children and all poor persons similarly ag-

grieved by the $2000 limit. The complaint sought temporary and permanent injunctions to prohibit the State Department of Education and the Acting Commissioner from enforcing the $2000 limit, as well as injunctions requiring the three City defendants to provide an adequate number of special classes and the usual accoutrement of declaratory relief. Since the request for injunctive relief against the State defendants was believed to fall within 28 U.S.C. § 2281, the plaintiffs asked that a court of three judges be convened.

The Department of Education and the Commissioner moved to dismiss for lack of personal jurisdiction under F.R.Civ.P. 12(b) (2), and for failure to state a claim on which relief could be granted, F.R.Civ.P. 12(b) (6). While these motions were *sub judice*, it was indicated to the court that the Board of Education had arranged to screen the three plaintiffs; as a result Steven Fournier was enrolled in a special class for brain-injured children and Teddy Sola in a regular class for the academic year 1969–70. The court's opinion tells us that Larry McMillan was "found ineligible for placement in a class for the brain-injured because he could not be safely managed in such a class and would cause a safety problem" and that his parents accepted this conclusion, but we find nothing about this in the record and at the argument there was some demur about it.

In any event the loss of two of the three plaintiffs precipitated a motion to intervene on behalf of two others, Ramon Rodriquez and Mitchell Garlick. We need not pause over Ramon since he was promptly placed in a special class for the brain injured, and the propriety of the denial of his motion to intervene is not contested. It was alleged that Mitchell Garlick was brain-injured, that he was excluded from a regular public school, that he had entered a private school where the tuition was $2500 a year, that the maximum state assistance

2. Larry McMillan's parents receive public assistance.

under § 4407 was now $1900, and that payment of the differential was a severe burden on his mother who had to support herself and four children out of a salary of $127 per week. The State opposed Mitchell's intervention on the basis of a report of the Board of Education showing that he was not brain injured but suffered from "mental retardation and from severe emotional disturbance." While the City maintains classes for Children with Retarded Mental Development (CRMD) and Mitchell had been placed in such a class, his adjustment was said to have been extremely poor, he was described as having engaged at times in dangerous and destructive behavior, and the Bureau of Child Guidance considered him too disturbed for a CRMD class placement. The court nevertheless granted his motion to intervene.

The plaintiffs withdrew their application for temporary injunctive relief against the three City defendants without prejudice. Later the judge concluded that the claim against the State defendants was unsubstantial. Accordingly he declined to ask for a three-judge court and dismissed the complaint as to them. Although recognizing that this was not necessary to the decision, he expressed the view that there was no jurisdiction under the Civil Rights Act over the Department of Education, but that there was over Nyquist, the Acting Commissioner.

McMillan and Garlick have appealed "from the orders denying their respective motions for convening a three-judge court * * * and from the judgment dismissing the action against defendants Department of Education of the State of New York and Nyquist for failure to state a claim upon which relief may be granted * * *." In view of the continued pendency of the action against the City defendants and the absence of a determination under F.R.Civ.P. 54(b), we have no jurisdiction to review the judgment in favor of the State defendants as a "final decision" under 28 U.S.C. § 1291. Nei-ther do we have appellate jurisdiction under 28 U.S.C. § 1292(a) (1) as we did in Gold v. Lomenzo, 425 F.2d 959 (1970), since that section is limited to *interlocutory* orders with respect to injunctions. All that is left, therefore, is the order refusing to request the convening of a three-judge court, and that does not sound to us like a "final decision." Still the Supreme Court has indicated, Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 716, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962); Schackman v. Arnebergh, 387 U.S. 427, 87 S.Ct. 1622, 18 L.Ed.2d 865 (1967), that in such a case, as we have said in *Gold*, "if a court of appeals does not exactly have *jurisdiction* of an appeal such as this, it has something sufficiently similar to enable it to reverse for the convening of a three-judge court," 425 F.2d at 961.

We deal at the outset with the claim of lack of jurisdiction over the State defendants since if the State is right about this, it would end the matter. Appellants do not seriously assert that the Department of Education is a "person" within 42 U.S.C. § 1983, see Monroe v. Pape, 365 U.S. 167, 187–192, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Clark v. Washington, 366 F.2d 678, 681 (9 Cir. 1966); Williford v. People of California, 352 F.2d 474 (9 Cir. 1965). That is not fatal, however, if Nyquist is. With respect to him the State relies on Judge Hays' statement in Rosado v. Wyman, 414 F.2d 170, 178 (2 Cir. 1969). Appellants counter that *Rosado* was reversed, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970) and, although Mr. Justice Harlan's opinion does not mention the point, it seems to assume that the action lay against the State Commissioner of Social Services. There is indeed some difficulty in conceiving that a state officer "subjects" a citizen to the deprivation of constitutional rights within the meaning of the Civil Rights Act when he is not taking action against the citizen but simply is unable to pay him more than a state statute allows, and this seems rather a long way from what the Reconstruction Congress could have

had in mind. But the Supreme Court evidently does not regard the point as even meriting discussion. See King v. Smith, 392 U.S. 309, 311–313, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Dandridge v. Williams, 397 U.S. 471, 90 S. Ct. 1153, 25 L.Ed.2d 491 (1970). So we reach the question whether the court was justified in concluding that plaintiffs' claim was unsubstantial "either because it is obviously without merit or because its unsoundness so clearly results from the previous decisions of this court [the Supreme Court] as to foreclose the subject." California Water Service Co. v. City of Redding, 304 U.S. 252, 255, 58 S.Ct. 865, 867, 82 L.Ed. 1323 (1938). We do not think so.

■ We begin by agreeing with the district court that a state does not deny equal protection merely by making the same grant to persons of varying economic need, Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 518, 57 S.Ct. 868, 81 L.Ed. 1245 (1937). We add that if New York had determined to limit its financing of educational activities at the elementary level to maintaining public schools and to make no grants to further the education of children whose handicaps prevented them from participating in classes there, we would perceive no substantial basis for a claim of denial of equal protection. While at first blush the latter proposition might seem decisive in the State's favor, it is not. Nothing in the Constitution, for example, requires a state to provide any system of welfare payments for the indigent, yet if it does establish one, the equal protection clause prevents its discriminating against new residents, Shapiro v. Thompson, *supra*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600.

The plaintiffs assert that the $2000 maximum established by § 4407 of New York's Education Law on assistance for the private education of a handicapped child not receiving instruction in public schools "because there are no adequate public facilities for instruction of such a child within this state because of the unusual type of the handicap or combination of handicaps," has come to work unfairly[3] in various ways. The most glaring is in a situation like Larry McMillan's whose parents' means do not permit their making any supplementary payment at all. Since the State grant is available only if the child in fact attends a private class, the limitation thus has come to have the doubtless unintended result that the grant, fully available to those whose economic need is less, is unavailable as a practical matter to those whose economic need is greatest. The case differs in this respect from an equal grant to all handicapped children unable to attend public school classes, which is not conditioned on their attending private school. Mitchell Garlick's mother has managed to eke out sufficient funds to use the grant, and we should not suppose that a substantial equal protection question was presented merely because this is harder on her than on a parent of larger means. But question is raised whether it is consistent with the equal protection clause that she should be required to pay $500 above the $2000 limit when, as appellants claim in their brief, it would cost the State or its municipalities more than $2000 to maintain Mitchell in a special class at a public school.[4] Granted that a state which gives financial aid for the private education of handicapped children unable to attend classes in public schools may have to establish some maximum, cf. Dandridge v. Williams, *supra*,

---

3. We put it this way since it seems to be agreed that when the statute was enacted in 1957, the $2000 figure was adequate to provide fully for almost all private school instruction of the handicapped.

4. Citing "Conference of Large City Boards of Education, 'Program 1970,' pp. 10, 21

(October, 1969)," appellants' brief states that during the 1969–70 school year the average per capita cost of providing public special classes in the six largest cities in New York was $2,891.50 and of providing special classes for the severely mentally retarded and emotionally disturbed was $4,452.49.

397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491, since the cost of private education of a child with a particular constellation of handicaps might be astronomical, is there rational basis for a ceiling lower than the cost that would have been incurred in maintaining the child in the most closely related type of public school class?[5] Lurking behind all this is the unresolved claim that certain children who are qualified for the special classes, as the State asserts Larry and Mitchell are not, are being kept out for lack of space and thereby forced to seek private education at a substantial expense to their parents not entailed for those who have been admitted,[6] and the related issue whether the suit was maintainable as a class action.

In stating these questions, we are not suggesting that they will necessarily be resolved in plaintiffs' favor. The State may well be able to develop sufficient reasons to justify what it has done. We hold merely that the claims were sufficiently substantial to deserve exploration, possibly after the taking of evidence, before a court of three judges. This is a developing area of application of the equal protection clause,[7] and questions should not be deemed unsubstantial merely because they might have been so considered twenty years ago when the

right-privilege distinction was more highly regarded than it is today.

The cause is remanded to the district judge with instructions that he vacate the judgment dismissing the complaint against the Acting Commissioner of Education and request the Chief Judge of the circuit to convene a three-judge court.

---

5. The State attempts to avoid this question by pointing out that it is the City's responsibility under § 4404 to provide educational facilities and, if these are not provided, the City Board of Education may issue an order to provide private education, the cost of which is divided between the City and State under § 4403. Thus, the State argues, § 4407 is a "purely gratuitous remedy" and any disparity between the amount of the *State* grant thereunder and the cost of public school education to the *City* is legally irrelevant. But the point remains that the State has obligated itself under § 4407 to provide educational aid for a certain class of handicapped children and there is still the question whether the entire scheme is consistent with the equal protection clause. Cf. McInnis v. Shapiro, 394 U.S. 322, 89 S.Ct. 1197, 22 L.Ed.2d 308 (1969), aff'g mem. 293 F.Supp. 327 (N.D.Ill.1968); Michelman, On Protecting the Poor

Through the Fourteenth Amendment, 83 Harv.L.Rev. 7, 47–59 (1969).

6. The City contended that the children whom the complaint described as in this category were simply awaiting necessary examination and screening.
   The considerations outlined in fn. 5 are applicable to this point also.

7. It has already attracted a considerable volume of scholarly writing. See, e. g., Note, Discriminations Against the Poor and the Fourteenth Amendment, 81 Harv. L.Rev. 435, 452–53 (1967); Developments in the Law—Equal Protection, 82 Harv.L.Rev. 1065 (1969); Coons, Clune & Sugarman, Educational Opportunity: A Workable Constitutional Test for State Financial Structures, 57 Calif.L.Rev. 305 (1969); Michelman, *supra*, 83 Harv.L. Rev. 7 (1969); see also Coons, Clune & Sugarman, Private Wealth and Public Education (1969).